FILED
U.S DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 26 2011

JAMES W. McCORMACK, CLERK
By: _____
                                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

THE STATE OF ARKANSAS *ex rel.*
DUSTIN MCDANIEL, ATTORNEY GENERAL                                    PLAINTIFF

v.          Case No. 4 · 1 1 - C V - 0 3 5 6 BSM

THOMAS RANDALL WELLS,
TRW VENTURES LLC,                    This case assigned to District Judge Miller
TRW VENTURES INC.,                   and to Magistrate Judge Volpe
TRW CREDIT REPAIR EXPERTS, INC., and
TRW CREDIT GROUP LLP                                                 DEFENDANTS

## COMPLAINT

The State of Arkansas *ex rel.* Dustin McDaniel, Attorney General ("the State"), brings this consumer-protection action against TRW Ventures LLC, TRW Ventures, Inc., TRW Credit Repair Experts, Inc., TRW Credit Group LLP, and Thomas Randall ("Randy") Wells (collectively "Defendants"). The State alleges as follows:

### INTRODUCTION

1. When Congress enacted the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, Congress found that "[c]ertain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means who are inexperienced in credit matters." 15 U.S.C. § 1679(a)(2).

2. This case involves the very sort of business practices that are prohibited under the CROA. Defendants have, for many years, misled consumers, deceived credit bureaus, and taken illegal upfront payments from customers.

3. The State brings this consumer-protection action to redress and restrain Defendants' violations of the CROA and the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.* ("ADTPA").

**PARTIES**

4. The plaintiff is the Arkansas Attorney General. As Arkansas's chief law enforcement officer, the Arkansas Attorney General is authorized to enforce the CROA under 15 U.S.C. § 1679h(c). The State has given prior written notice of this lawsuit to the Federal Trade Commission by providing a copy of this complaint as set forth in 15 U.S.C. 1679h(c)(2)(A). The Arkansas Attorney General also enforces the ADTPA pursuant to Ark. Code Ann. § 4-88-103. Defendants' legal obligations under the ADTPA are not preempted by the CROA. 15 U.S.C. § 1679j.

5. Defendant Thomas Randall ("Randy") Wells is the owner, chief executive officer, and president of the corporate defendants. At all times relevant to this complaint, Wells operated, controlled, and directed the business activities of the corporate defendants. He also caused, personally participated in, and ratified the acts and practices of the corporate defendants. Therefore, Wells is a "controlling person" of the corporate defendants within the meaning of Ark. Code Ann. § 4-88-113(d). As such, he is personally liable not only for his personal acts which violated Arkansas law, but also for the collective acts of the corporate defendants.

6. All of the corporate defendants maintain their headquarters at 680 Highway 120 East, Suite 100, Pottsboro, Texas, 75076.

7. Defendant TRW Ventures LLC is registered as a credit repair organization in the State of Texas. There is also an entity by the same name that is domesticated in the State of Delaware. The name "TRW Ventures" appears in the contracts that customers sign for the

purpose of obtaining credit-repair services (*see* **Exhibit 1**). In addition, Wells regularly uses letterhead that says "TRW Ventures."

8. Defendant TRW Ventures, Inc. is a Texas corporation. The Texas Secretary of State reports that TRW Ventures, Inc.'s registered agent is Thomas Randall Wells, who maintains an address at 1111 W. Sears St., Denison, TX 75020-3325. However, the Arkansas Attorney General's pre-litigation mailings to this address were returned by the U.S. Postal Service with an "Attempted Not Known" notation.

9. Defendant TRW Credit Repair Experts, Inc., appears on a website affiliated with Wells. The Office of the Arkansas Attorney General has not been able to learn additional information about this entity, such as its address and state of domestication.

10. Defendant TRW Credit Group LLP is the entity that is most commonly mentioned in the contracts that customers sign for the purpose of obtaining credit-repair services. In fact, customers are instructed to make their checks payable to TRW Credit Group. However, the Arkansas Attorney General's Office has not been able to locate an entity incorporated in any state with the name "TRW Credit Group LLP."

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the federal CROA. This Court has supplemental jurisdiction over the State's related ADTPA claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the State's claims occurred in this district.

## FACTUAL ALLEGATIONS

13. Wells commenced business operations in approximately March 2000 by forming a credit-repair business called TRW Ventures LLC.

14. Over the years, Wells has created a number of similar business entities that, upon information and belief, all use Wells' initials in the corporate name. Those entities include TRW Ventures Inc., TRW Credit Experts Inc., and TRW Credit Group LLP.

15. The various TRW entities do not have separate operations. They have the same ownership structure, support staff, and corporate headquarters. They also use the same form contract with customers. Thus, the various entities operate as a single enterprise. Indeed, some of the entities are apparently not registered with a secretary of state.

16. Defendants have repeatedly used various instrumentalities of interstate commerce—including the interstate telephone network, Internet, and mails—to sell, provide, or perform (or represent that they can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i). Thus, Defendants are "credit repair organizations" under the Credit Repair Organizations Act, 15 U.S.C. § 1679a(A).

17. Under Defendants' business model, the first step in the credit-repair process requires the customer, with Defendants' assistance, to obtain copies of the customer's credit report from the three major credit bureaus (also known as "credit reporting agencies"): TransUnion, Equifax, and Experian. Next, the customer sends the credit reports to Defendants' corporate headquarters. Finally, after receiving the customer's credit report, Defendants lodge

disputes regarding adverse credit information with the three credit bureaus. For example, the Fair Credit Reporting Act contains a list of negative credit information that must be excluded from a consumer's credit report after a certain number of years. *See* 15 U.S.C. § 1681c. Eventually, Defendants' efforts may cause the credit bureaus to delete some or all of the adverse information contained on the customer's credit reports. Of course, consumers also have the option of disputing adverse credit information with the credit bureaus directly, without the involvement of Defendants or any other credit repair organization.

18. According to the representations contained on some of Defendants' websites, Defendants sell credit-repair services in all 50 states, including Arkansas.

19. Over the years, Defendants have enlisted sales representatives in various states to help market Defendants' credit-repair services. Defendants pay the sales representatives on a commission basis. Defendants have acquired Arkansas customers through the use of one or more in-state sales representatives, in addition to maintaining various Internet websites that are accessible by Arkansas consumers.

20. The sales representatives market Defendants' credit-repair services in a manner approved by Defendants. After making the initial contact, the sales representatives instruct potential customers to interact with Defendants directly. Customers always enter into contracts with one of the defendants and not with the sales representatives. Thus, the sales representatives are not independent contractors who operate their own credit-repair businesses. Rather, the sales representatives are agents of Defendants.

21. To be sure, some of Defendants' sales representatives may operate their own websites. But those websites always feature the "TRW" name. The websites also provide

Defendants' corporate address and a link to Defendants' form contract. Thus, the websites are not truly independent of Defendants.

22. Defendants' sales representatives and support staff—situated in various states (including Arkansas) and at Defendants' headquarters in Texas—routinely represent that Defendants can remove bankruptcies, repossessions, tax liens, student loan deficiencies, and other negative information from credit reports. Defendants often fail to disclose that such information can only be deleted if it is inaccurate, outdated, or some other legal reason. Thus, customers are often left with the impression that *all* negative information can (and will) be removed.

23. Customers usually do not know the legal criteria that govern which negative credit items can be legitimately disputed. Defendants, in contrast, purport to be experts on this topic. Even so, Defendants frequently fail to research their customers' credit histories or interact with their customers so that the disputed items are limited to those items that legally must be excluded from a credit report. As a result, Defendants routinely dispute *all* negative information contained on the customer's credit report—even if it is timely, accurate, or otherwise valid.

24. The Fair Credit Reporting Act permits the credit bureaus to refuse to delete or reinvestigate disputed information if the credit bureau "reasonably determines" that a dispute is frivolous or irrelevant. 15 U.S.C. § 1681i(a)(3). Such evidence may consist of receipt of letters disputing all information in the file without allegations concerning the specific items in the file. *See* FTC Official Staff Commentary § 611, item 11. Thus, Defendants' blanket disputes do not serve their customers well and, in fact, may result in no changes to the customers' credit reports. Such a result is contrary to the reasonable expectation of consumers, particularly given Defendants' rosy sales presentations.

25. Defendants charge sizable fees for their services.

26. Defendants allow consumers to use one of three payment options (*see* **Exhibit 2**):

    a. Customers can make an upfront payment of $699;

    b. Customers can make an upfront payment of $350, followed by a payment 30 days later of $349. The first payment must be submitted with the signed contract before Defendants undertake work; or

    c. Customers can pay "$99 down" and then pay four monthly installments of $175 to a lender called RGR Finance for a total of $799. Defendants promote this installment option as a good way for customers to establish a good payment record and thereby improve their credit score. However, this representation is false because Defendants and RGR Finance do not report any information (positive or negative) to the credit bureaus regarding the customers' payment history under the financing option.

27. In addition, Defendants always charge an upfront "processing fee" of $49, even though the amount of this fee bears no reasonable relationship to any work performed by Defendants.

28. Defendants failed to cooperate with the Office of the Arkansas Attorney General prior to this litigation, so the details of this financing arrangement are unclear. The financing agreement that customers are required to sign (*see* **Exhibit 3**) suggests that RGR Finance lends a total of $700 to the customer and that RGR Finance forwards the money to Defendants on the customer's behalf. Under that scenario, Defendants receive the entire $799 (in addition to the consulting fee) before performing any work. Another scenario is that RGR Finance is simply an

arm of Defendants, meaning that Defendants receive the upfront payment and subsequent installments. Either way, Defendants take significant upfront payments under the financing option, and the entire sum is usually collected before the completion of work under the contract.

29. Under the form contract that Defendants use, customers are led to believe that their payments are deposited in an "escrow" account with the Landmark Bank of Texas. In fact, the entire amount of the customer's upfront payment is deposited into a general business operating account and commingled with other monies that are used for various purposes. Under a true escrow account, Landmark Bank would hold the customer's funds in trust and tender those monies to Defendants only after verifying that certain conditions have been satisfied. Landmark Bank does not maintain such an account.

30. Defendants' representations regarding the escrow account are materially misleading.

31. Even if Landmark Bank maintained a true escrow account for the benefit of Defendants' customers (and it does not), such an arrangement would be illegal. The Credit Repair Organizations Act prohibits credit repair organizations from "charg[ing] or receiv[ing] any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b). Thus, even if the account at Landmark Bank could be characterized as an "escrow" account, the fact remains that Defendants "charge" or "receive" a consulting fee and an additional payment before fully performing the contracted services.

## CLAIMS FOR RELIEF

### Count One: Violations of the Credit Repair Organizations Act

32. The State incorporates all of the preceding allegations.

33. Defendants have violated the CROA by engaging in the following conduct:

   a. Defendants have repeatedly violated 15 U.S.C. § 1679b(a)(3) by making untrue or misleading representations regarding Defendants' services. Specifically, Defendants have given the impression to customers that all negative information on customers' credit reports can be removed, even if the information is accurate, recent, and otherwise valid.

   b. Defendants lodge blanket disputes with the credit bureaus and have failed to undertake reasonable efforts to learn whether customers' negative credit information can be the subject of a legitimate dispute. As a result, Defendants have repeatedly violated 15 U.S.C. § 1679b(a)(1) and 15 U.S.C. § 1679b(a)(4) by indiscriminately challenging the negative information contained in customers' credit reports.

   c. Defendants have repeatedly charged and/or received money or other valuable consideration for the performance of Defendants' services before such service is fully performed in violation of 15 U.S.C. § 1679b(b).

34. Pursuant to 15 U.S.C. § 1679h(c)(1), the State is entitled to (1) an injunction against Defendants' violations, (2) damages on behalf of Arkansas residents, (3) costs, and (4) attorneys' fees. The damages on behalf of Arkansas residents include, at a minimum, "any amount paid by [the residents] to [Defendants]." 15 U.S.C. § 1679g(B).

**Count Two: Violations of the Arkansas Deceptive Trade Practices Act**

35. The State incorporates all of the preceding allegations by reference.

36. The Arkansas Deceptive Trade Practices Act prohibits all persons from:

  a. Knowingly making false representations as to the characteristics, uses, and benefits of goods or services (Ark. Code Ann. § 4-88-107(a)(10));

  b. Engaging in unconscionable, false, or deceptive acts or practices in business, commerce, or trade (Ark. Code Ann. § 4-88-108(10));

  c. The use of any deception, fraud, or false pretense (Ark. Code Ann. § 4-88-108(1)); and

  d. The concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, suppression, or omission (Ark. Code Ann. § 4-88-108(2)).

37. Defendants violated the ADTPA by engaging in the following conduct:

  a. Misleading customers into believing that all negative information on their credit reports can be the subject of a legitimate challenge with the credit bureaus and that the potential exists to remove such information legitimately;

  b. Falsely informing credit bureaus that information contained on customers' credit reports is inaccurate, outdated, or otherwise invalid when, in fact, the information is properly contained on the customers' credit reports;

  c. Falsely telling customers that Landmark Bank is an escrow agent that maintains an escrow account on behalf of customers; and

  d. Falsely telling customers that the installment option is beneficial because it has the potential to improve the customer's credit score when,

in fact, Defendants know that positive information is not reported to the credit bureaus. Defendants

38. Defendants have engaged in a course of trade or commerce and engaged in acts or practices that constitute unfair or deceptive acts or practices, each of which is a violation of the ADTPA.

## PRAYER FOR RELIEF

39. WHEREFORE, the State of Arkansas *ex rel.* Dustin McDaniel, Attorney General, respectfully requests that this Court:

    a. Issue an order under 15 U.S.C. § 1679h(c)(1)(B), Ark. Code Ann. § 4-88-104, and Ark. Code Ann. § 4-88-113(a)(1) that permanently enjoins Defendants from engaging in any of the unlawful practices described in this complaint;

    b. Enter judgment against Defendants for damages under 15 U.S.C. § 1679h(c)(1)(B) and 15 U.S.C. § 1679g(a)(1) and restitution under Ark. Code Ann. § 4-88-113(a)(2)(A);

    c. Issue an order assessing civil penalties, not to exceed $10,000 per violation, against the Defendants pursuant to Ark. Code Ann. § 4-88-113(a)(3); and

    d. Issue an order under 15 U.S.C. § 1679h(c)(1)(C) and Ark. Code Ann. § 4-88-113(e), requiring Defendants to pay the State's costs of this investigation and litigation and attorneys' fees;

                DUSTIN MCDANIEL
                Attorney General

By: *[signature]*

Sarah R. Tacker, Ark. Bar No. 2002189
David A. Curran, Ark. Bar No. 2003031
Public Protection Department
Office of the Arkansas Attorney General
323 Center St., Suite 500
Little Rock, AR 72201
Phone: (501) 682-2007
Fax: (501) 682-8118
Email: sarah.tacker@arkansasag.gov
       david.curran@arkansasag.gov

# TRW Credit Group

## CUSTOMER AGREEMENT

Please make check payable to:   TRW Credit Group    TW02556

## APPLICANTS PERSONAL INFORMATION

| Name (Last, First, Middle Initial) | Social Security Number |
|---|---|
| Mailing Address (Include Apt Number) | Date of Birth |
| City, State, Zip | Home Phone |
| Email Address | Cell Phone Number |

This agreement or contract is not binding and enforceable until received and accepted by TRW Credit Group at its home office in Pottsboro, TX. This writing is the full and complete agreement between TRW and the customer and shall not be orally amended. Processing will be handled by **TRW Credit Group, 680 Hwy 120 East, Suite 100, Pottsboro, Texas 75076. (903) 786-7100.**

**CUSTOMER AGREES TO:**
1. Provide TRW with personal credit information, credit bureau reports, and/or authorizes TRW or its designee to obtain credit reports on customers behalf.
2. Immediately notify TRW of any changes of address.
3. Identify in writing any accurate negative information which you believe to be true, so that we can be sure not to dispute such item/items as per the Fair Credit Reporting Act.
4. Immediately forward all correspondence received from the credit reporting agencies to TRW or its designated agent, and to notify TRW if final credit investigation reports have not been received within sixty days after customer receives the above referenced initial correspondence.

**CUSTOMER COST AND PAYMENT:**
The customer shall pay $_____ for consultation and ordering of all Bureaus plus a **$49.00** processing fee equaling $_____. All Credit Repair will then be done Free of Charge. Amount will be deposited into an escrow account with Landmark Bank of Texas at the Denison office in Denison, TX, until services are rendered. Customer acknowledges that they have the right to verify the escrow account by contacting TRW. If we do not better your credit profile, we will refund your entire consultation fee.

**SERVICES TO BE PERFORMED BY TRW:**
During the evaluation and initial challenge process, TRW will review all credit information provided by the customer, prepare letters challenging items appearing on the customer's credit reports which the customer indicates are inaccurate, incomplete, obsolete, or unverifiable as per the Fair Credit Reporting Act. TRW will submit transmittals of challenge letters within 3 to 7 business days, but not exceed 10 business days of receipt of credit information from customer, after which, these evaluation/initial challenge services shall have been fully performed. TRW will follow-up and review all correspondence received by the customer from the credit reporting agencies, in preparation of follow-up challenges as per the Fair Credit Reporting Act and transmittal of the same. TRW agrees only to challenge items under the Fair Credit Reporting Act. TRW makes no guarantee concerning improvement of the customer's credit history or FICO score, as both are dependent upon many factors beyond our control. Should TRW be unable to improve a customer's credit profile, the customer shall be entitled to a refund of the consultation fee. Any questions concerning your personal credit profile may be answered by contacting TRW at (903) 786-7100. This contract is valid for ONE (1) YEAR from date of signed contract. I understand and agree to the above stated terms of service and payment.

## LIMITED POWER OF ATTORNEY

I do hereby grant a limited power of attorney to TRW Credit Group and any persons of their employ or designees for the express purpose of preparing and signing all documents written with the intent of challenging and/or verifying information contained in the files maintained by the following consumer credit reporting bureaus: Equifax (CSC Credit Services), Experian and Transunion.

| X | X | |
|---|---|---|
| Client's Name (Please Print) | Client's Signature | Date |


EXHIBIT 1

# PRIVACY DISCLOSURE NOTICE

**TRW CREDIT GROUP PRIVACY POLICY**
TRW Credit Group is required by law to inform our clients of our policies regarding privacy of customer information. Therefore, we are providing you with a copy of this policy.

**NON-PUBLIC PERSONAL INFORMATION**
TRW collects private, personal information about you that is provided by you or obtained by us on your behalf with information you provide to us.

**DISCLOSURE OF CLIENT INFORMATION**
We do not and will not disclose our client's private (non-public) personal information obtained in our process to any third party, except as required by law. No third party will obtain information about you from TRW without your written consent.

**CONFIDENTIALITY & SECURITY OF CLIENT INFORMATION**
TRW retains records relating to professional services that we provide so that we are able to assist you in your needs. To safeguard your personal information we maintain physical, electronic and procedural methods that comply with our professional standards. If you have any questions, please contact us at (903) 786-7100 because your privacy and our professional ethics are most important to us.

# CONSUMER CREDIT FILE RIGHTS UNDER STATE AND FEDERAL LAW

You have the right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any credit repair company or credit repair organization has the right to have accurate, current and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

You have the right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance or rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days or if you are a recipient of public welfare assistance or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

Credit bureaus are required to follow reasonable procedures to insure that the information they report is accurate. However, mistakes may occur.

You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then investigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues to you.

The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact: The Public Reference Branch, Federal Trade Commission, Washington, D.C.

X_____          X_____
    Client's Signature                      TRW Representative

**CUSTOMER ACCEPTANCE & ACKNOWLEDGEMENT OF CREDIT RESTORATION SERVICES**
For quality and legal purposes it is necessary for TRW Credit Group to have each client initial beside each of the below listed items to confirm that they received all of the following information. It is very important that our clients receive, read and understand all information provided to them by TRW and its representatives.

X_____ Customer Agreement     X_____ Limited Power of Attorney     X_____ Privacy Disclosure Notice

X_____ Consumer Credit File Rights Under State and Federal Law        X_____ Notice of Cancellation

I fully understand my responsibility in this program and acknowledge all my questions have been answered.

X_____          X_____
    Client's Signature                      TRW Representative

# We Will Order All 3 Credit Bureaus:

Experian_____

Equifax (CSC Credit Services)_____

Transunion_____

**In order to do this we MUST have a copy of:**

- ☐ Your Drivers License
- ☐ Your Social Security Card
- ☐ 2 ITEMS from the list below dated within the last 2 months with your NAME and CURRENT ADDRESS
  *bank statement, cancelled check, Drivers License, water, gas, electric, cable, telephone (no cell) bill, stamped PO Box receipt
- ☐ Copy of voided check (if applicable)

These items must be given to your salesperson, mailed or faxed ASAP to:

**TRW Ventures**
**680 HWY 120 E, Suite 100**
**Pottsboro, TX 75076**
Phone: (903) 786-7100 - Fax: (903) 786-7108

Until received, the process cannot move forward.

You should receive all 3 bureau reports in no more than 15 days. **IF YOU DON'T**, you must call the office immediately at (903) 786-7100. After receiving your reports, we will dispute all items immediately. All results will be mailed directly to you in approximately 36 to 45 days. If you do not receive them, you must call the office at (903) 786-7100. When you do receive the results, please forward them to this office. If everything isn't removed, we will continue to dispute any remaining adverse items. **(THIS IS AN ONGOING PROCESS).**

If you do not forward the bureaus or contact us, we will take for granted everything was removed and you were happy with the results. X_____

You should receive NEW BUREAUS approximately every 36 to 45 days. Mark this on your calendar. X_____

------------------------------------------------------------

## NOTICE OF CANCELLATION

You may cancel this contract without any penalty or obligation at any time prior to midnight of the third business day after the contract is signed. If you cancel, any payment placed in escrow by TRW Credit Group will be returned within 10 days following receipt by the seller of your cancellation notice. To cancel this contract, fax or deliver a signed and dated copy of this cancellation notice, or any other written notice to:

**TRW CREDIT GROUP, 680 Hwy 120 East, Suite 100, Pottsboro, TX 75076 – Fax (903) 786-7108**

NO LATER THAN MIDNIGHT OF_____I HEREBY CANCEL THIS TRANSACTION.

X_____        _____
             Signature                                                           Date

***DO NOT SIGN ON THE LINE ABOVE UNLESS YOU INTEND TO CANCEL***

# ☐TRW Credit Group
## *Payment Options*

(Choose One)

☐   I choose to pay one full payment of $699 ($100 Savings)

☐   I choose to pay two payments- 1st $350, 2nd $349 ($100 Savings)*

☐   I choose the "$99 down" Finance Plan ($799) **

*First payment due with contract, second payment to be debited 30 days later.
**Initial payment of as little as $99 with 4 equal payments of the balance.

## How I will Pay

**CREDIT OR DEBIT CARD:**

TYPE OF CARD (CIRCLE ONE)   VISA   AMEX   DISOVER   MC

NAME ON CARD _____

CARD#_____ EXP DATE _____ SECURITY CODE _____

*I authorize TRW Credit Group to charge/ debit my account for the selected service for the amounts and dates shown.*

SIGNATURE _____ DATE (S) _____

## OR

**CHECK AUTHORIZATION**

❋❋ ATTACH A VOIDED CHECK AND FILL OUT ALL BANK INFO BELOW ❋❋

NAME ON CHECK _____

BANK NAME _____

ROUTING #_____ ACCOUNT # _____

AMOUNT OF CHECK (S) _____ DATES (S) _____

*I authorize TRW Credit Group to print a check on my bank account for the selected service in the amount shown. I understand that the check will show on my monthly statement as any other check. I also authorize TRW to draft my account for a return check charge of $25.00 in the event any of my checks are returned.*

SIGNATURE: _____ DATE (S) _____

BY PHONE: _____ MOTHER'S MAIDEN NAME: _____

EXHIBIT 2

**RGR Finance**
**3026 Mockingbird Lane #118**
**Dallas, TX 75205**
**(214) 361-7909**

Customer Agreement

This is a written agreement between RGR Finance and _____ referred herein as customer. This agreement will be put in effect once the customer's signature is recorded at the bottom of this agreement.

RGR Finance agrees to lend customer $700 for a period of 4 months. The customer agrees to repay the loan back to RGR Finance in 4 monthly installments of $175.

The customer agrees to allow RGR Finance to draft the monthly payments directly from customer's checking account or credit card as indicated on the following dates with the following check numbers.

**Dates to draft:** 1st _____ 2nd _____ 3rd _____ 4th _____

**Bank Information:**

Check Numbers: 1st _____ 2nd _____ 3rd _____ 4th _____

Routing Number: _____ Account Number: _____

Bank Name: _____

**Credit Card Information:**

Type of card (circle one) VISA   AMEX   DISCOVER   MC        Bank Name: _____

Billing Zip Code: _____ Exp Date: _____ Code on Back of Card: _____

Credit Card # _____

If the customer does not meet the payment agreement set forth in this contract RGR Finance will begin collection efforts immediately. All costs incurred by RGR Finance in an effort to collect this debt will be charged to and paid by the customer. Also, RGR Finance will immediately request TRW Credit Group to stop the credit repair process until payment(s) has been satisfied.

Customer Name: _____

Address: _____

City: _____ State: _____ Zip Code: _____

Social Security Number: _____ Date of Birth: _____

Phone Number: _____ 2nd Phone Number: _____

E-mail address: _____ (we must have 2 forms of contact information)

Signature: _____ Date of Signature: _____

Name, phone number and relationship of two relatives not living with you:

1. _____  _____  _____

2. _____  _____  _____

**Contract will not be accepted unless all applicable blanks are filled out**

EXHIBIT 3